Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Byron R. Goldstein (SBN 289306)
brgoldstein@gbdhlegal.com
William C. Jhaveri-Weeks (SBN 289984)
wjhaveriweeks@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:    (510) 763-9800
Fax:   (510) 835-1417

Bruce C. Fox, Esquire
bruce.fox@obermayer.com
Andrew J. Horowitz
andrew.horowitz@obermayer.com
OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
BNY Mellon Center, Suite 5240
500 Grant Street
Pittsburgh, PA 15219
Tel:    (412) 566-1500
Fax:   (412) 566-1508

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR GARCIA, ROBERT CAHIGAL, BRIAN HOLLIDAY AND TINA DIEMER, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>PPG INDUSTRIES, INC.,<br><br>      Defendants. | Case No.: C 15-00319 WHO<br><br>**UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Hon. William H. Orrick<br><br>Date:     April 20, 2016<br>Time:    2:00 p.m.<br>Dept:    Courtroom 2, 17th Floor<br>Trial:     Not set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION................................................................................vii

MEMORANDUM OF POINTS AND AUTHORITIES................................................................1

    I.      INTRODUCTION.........................................................................................1

    II.     PROCEDURAL BACKGROUND ................................................................2

    III.    THE PROPOSED SETTLEMENT TERMS, AND FACTORS IN THE
           DECISION TO SETTLE.............................................................................4

         A.    Proposed Settlement Terms.......................................................4

              1.    The Settlement Provides Timely, Significant Relief to the
                     Class. ............................................................................4

              2.    The Settlement Process Provides Fair Notice to the California
                     Class and FLSA Class, and the Scope of the Release Is
                     Appropriate. .................................................................6

         B.    Factors in Plaintiffs' Decision to Settle.....................................7

              1.    PPG's Voluntary Payment of Supplemental Overtime in
                     Response to Plaintiffs' Pre-Suit Demand Has Accomplished
                     Much of the Relief Sought, and the Settlement Fully Recovers
                     the Remaining Overtime Owed. ....................................7

              2.    On Other Claims, the Uncertain Merits Outcome Favors
                     Settlement. ....................................................................8

               3.    Uncertainties about Class Certification and Willfulness vs.
                     Good Faith Favor Settlement............................................9

               4.    The Delay and Expense of Proceeding to Trial and Post-Trial
                     Appeals Favors Settlement. ...........................................10

               5.    Interest and Penalties .....................................................10

    IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
           SETTLEMENT OF CALIFORNIA CLASS CLAIMS .......................................11

          A.    Class Action Settlements Are Encouraged.................................11

          B.    Plaintiffs Contend that the Settlement Satisfies the Rule 23
             Requirements............................................................................11

               1.    Numerosity ...................................................................11

               2.    Typicality......................................................................12

               3.    Adequacy .....................................................................13

i

|   |   |   |   |
|---|---|---|---|
| | | 4. | Commonality .................................................................................. 13 |
| | C. | | The Settlement Is Fair, Adequate and Reasonable. .................................... 14 |
| | | 1. | The Settlement Is Non-Collusive, and Is the Product of Aggressive Litigation that Caused Defendant to Pay Overtime Owed, Followed by an Arm's Length Mediation. ......................... 14 |
| | | 2. | The Strength of Plaintiffs' Case Should Be Weighed Against the Risk, Expense, Complexity and Duration of Further Litigation, and the Risk of Achieving and Maintaining Class Action Status. ................................................................................. 16 |
| | | 3. | The Amount Offered in Settlement in Light of the Claims Alleged Weighs Strongly in Favor of Preliminary Approval. ........ 16 |
| | | 4. | Given the Nature of the Claims and the Information Disclosed by Defendant, Plaintiffs and Counsel Are Well-Situated to Arrive at a Fair Settlement. ............................................................ 17 |
| | | 5. | The Experience and Supportive Views of Counsel Weigh in Favor of Preliminary Approval. ..................................................... 17 |
| | | 6. | All Additional Settlement Terms are Fair. ..................................... 17 |
| | D. | | At Final Approval, the Settlement Should Be Approved as Fair and Reasonable to FLSA Class Members. ....................................................... 24 |
| V. | | | CONCLUSION ...................................................................................................... 24 |

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Beef Indus. Antitrust Litig.,*
     607 F. 2d 167 (5th Cir. 1979)..............................................................................................14

*Bellinghausen v. Tractor Supply Co.,*
     No. 13-cv-02377-JSC, 2015 WL 1289342 (N.D. Cal. Mar. 20, 2015) .............................19

*In re Bluetooth Headset Prods. Liab. Litig.,*
     654 F.3d 935 (9th Cir. 2011)..................................................................................20, 21, 22

*Boyd v. Avanquest N. Am. Inc.,*
     No. 12-cv-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015) .........................14

*Boyd v. Bank of Am. Corp.,*
     300 F.R.D. 431 (C.D. Cal. 2014)..........................................................................................14

*Boyd v. Bank of Am. Corp.,*
     No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)................16, 19

*Churchill Vill., LLC. v. Gen. Elec.,*
     361 F.3d 566 (9th Cir. 2004)................................................................................................22

*Class Pls. v. City of Seattle,*
     955 F.2d 1268 (9th Cir. 1992) ..............................................................................................14

*Craft v. Cnty. of San Bernardino,*
     624 F. Supp. 2d 1113 (C.D. Cal. 2008)................................................................................22

*Dennis v. Kellogg Co.,*
     No. 09-CV-1786-IEG (WMC), 2013 WL 1883071 (S.D. Cal. May 3, 2013) ....................23

*Dyer v. Wells Fargo Bank, N.A.,*
     303 F.R.D. 326 (N.D. Cal. 2014) ..........................................................................................19

*Ellis v. Costco Wholesale Corp.,*
     285 F.R.D. 492 (N.D. Cal. 2012) ..........................................................................................13

*Farrar v. Hobby,*
     506 U.S. 103 (1992) ..............................................................................................................20

*Fobroy v. Video Only, Inc.,*
     No. C-13-4083 EMC, 2014 WL 6306708 (N.D. Cal. Nov. 14, 2014) ..................................8

*Franklin v. Kaypro Corp.,*
     884 F.2d 1222 (9th Cir. 1989)..............................................................................................11

iii

*Gaudin v. Saxon Mortg. Servs., Inc.*,
    297 F.R.D. 417 (N.D. Cal. 2013) .................................................................13

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) .......................................................................11

*Gen. Tel. Co. of the NW., Inc. v. E.E.O.C.*,
    446 U.S. 318 (1980) ....................................................................................12

*Gribble v. Cool Transports Inc.*,
    No. CV 06-04863 GAF, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008).........................23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................21

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)...........................11

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ...............................19

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, *et al.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ................22

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ..................................................................19

*Jamison v. Butcher & Sherrerd*,
    68 F.R.D. 479 (E.D. Pa. 1975) .....................................................................14

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ......................................................................20

*In re Live Antitrust Litig.*,
    247 F.R.D. 98 (N.D. Cal. 2007) ....................................................................12

*Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*,
    83 F.3d 292 (9th Cir. 1996) ............................................................................9

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ....................................................................24

*Ma v. Covidien Holding, Inc.*,
    No. SACV 12-02161-DOC, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................14, 16

*Nelson v. Avon Prods., Inc.*,
    No. 13-cv-02276-BLF, 2015 WL 1778326 (N.D. Cal. Apr. 17, 2015).........................11

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................14

iv

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..................................................................................19

*Ozga v. U.S. Remodelers, Inc.*,
    No. C 09-05112 JSW, 2010 WL 3186971 (N.D. Cal. Aug. 9, 2010)..............................19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................12

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) .........................................................................19

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................16

*Satchell v. Fed. Exp. Corp.*,
    No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................15

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995).........................................................................19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...............................................................................22

*Williams v. Costco Wholesale Corp.*,
    No. 02 CV 2003 IEG (AJB), 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) .......................23

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. May 13, 2011) .............................21

**State Cases**

*Bell v. Farmers Ins. Exch.*,
    135 Cal. App. 4th 1138 (2006) ..............................................................................10

*In re Cellphone Fee Termination Cases*,
    186 Cal. App. 4th 1380 (2010) ..............................................................................19

*Cochran v. Schwan's Home Serv., Inc.*,
    228 Cal. App. 4th 1137 (2014) ................................................................................9

*Price v. Starbucks Corp.*,
    192 Cal. App. 4th 1136 (2011) ................................................................................8

**Federal Statutes**

29 U.S.C.
    § 216(b) .............................................................................................5, 11, 24
    § 260 ...........................................................................................................9

**State Statutes**

Cal. Bus. and Prof. Code
     § 17200 ....................................................................................................................2

Cal. Lab. Code
     § 203 ....................................................................................................................9, 18
     § 212(d) ....................................................................................................................8
     § 226 ....................................................................................................................3, 9, 18
     § 2699 *et seq.* (Private Attorneys General Act of 2004) ........................................ *passim*
     § 2802 ....................................................................................................................9, 12, 13, 15

Code Civ. Proc.
     § 1021.5(a) ..............................................................................................................20

**Rules**

Fed. R. Civ. P.
     23 ........................................................................................................................ *passim*

**Other Authorities**

*N.D. Cal. Class Settlm't Guidance,*
     www.cand.uscourts.gov/ClassActionSettlementGuidance ..................................... *passim*

PLS.' MOT. FOR PRELIM. APPROVAL OF CLASS & COLLECTIVE ACTION SETTLM'T; CASE NO. C 15-00319 WHO

## NOTICE OF MOTION AND MOTION

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 20, 2016 at 2:00 p.m.,[1] in the Courtroom of the Honorable William H. Orrick, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Hector Garcia, Robert Cahigal, and Tina Diemer (the "California Class Representatives"), on behalf of themselves and all others similarly situated, will and hereby do move the Court to: preliminarily approve the Settlement Agreement between the Plaintiffs and Defendant PPG Industries, Inc. ("PPG" or "Defendant") settling the California claims alleged in this case; certify for settlement purposes only the Federal Rule of Civil Procedure Rule 23 class described herein; appoint Goldstein, Borgen, Dardarian & Ho LLP and Obermayer Rebmann Maxwell & Hippel, LLP as class counsel; appoint Hector Garcia, Robert Cahigal, and Tina Diemer as California Class Representatives; appoint KCC Class Action Services, LLC as the Claims Administrator; authorize the mailing of notice to the California Rule 23 Class (as defined in the Settlement Agreement and the Memorandum of Points and Authorities); and schedule a final approval hearing date for June 22, 2016 at 2:00 p.m., or as soon thereafter as the matter may be heard.

In addition, at the final approval hearing, Plaintiffs Hector Garcia, Robert Cahigal, and Brian Holliday (the "FLSA Collective Action Representatives"), on behalf of themselves and all others who have filed FLSA opt-ins in this matter, will move the Court to approve the Settlement Agreement between the Plaintiffs and PPG settling the federal Fair Labor Standards Act ("FLSA") claims alleged in this case.

This Motion is based upon: the Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement; the Memorandum of Points and Authorities in Support Thereof; the Declaration of Laura L. Ho, Esq., and the exhibits thereto, including the Settlement Agreement, the Proposed Notice to the California Rule 23 Class, and the Proposed Notice to the FLSA Class; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the

---

[1] The Parties submit herewith a Motion to Shorten Time requesting this Motion to be heard at the already-scheduled status conference on March 22, 2016.

complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider.  A Proposed Order is submitted herewith.

Dated:  March 11, 2016.                    Respectfully submitted,

                                             /s/ William C. Jhaveri-Weeks
                                           Laura L. Ho
                                           William C. Jhaveri-Weeks
                                           Byron R. Goldstein
                                           GOLDSTEIN, BORGEN, DARDARIAN & HO

                                           Bruce C. Fox
                                           Andrew J. Horowitz
                                           OBERMAYER REBMANN MAXWELL & HIPPEL, LLP

596882.3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs move for preliminary approval of a settlement of this lawsuit, which asserts several wage and hour violations against Defendant PPG Industries, Inc. ("PPG").

*First*, on behalf of all non-exempt PPG employees in California, Plaintiffs allege that PPG failed to include the following mandatory information on its wage statements:  the inclusive dates of the period for which the employee was being paid; the total hours worked in that period; the legal name and address of the employer; and the hourly rate(s) in effect during the pay period along with the number of hours worked at each rate.  In addition, Plaintiffs allege that PPG required its employees to receive their pay via direct deposit, which is impermissible under the Labor Code.

*Second*, on behalf of all PPG employees who held the Territory Manager ("TM") position in PPG's Home Depot or Lowe's business lines, whether in California or nationwide, Plaintiffs allege that PPG incorrectly calculated the applicable overtime rate by failing to include non-discretionary bonuses in TMs' "regular rate of pay."  Shortly after Plaintiffs filed suit, PPG attempted to remedy this failure by making a "retro" supplemental overtime payment to TMs across the country.  The supplemental payment was adequate to compensate some TMs, but was calculated incorrectly with respect to others, and therefore did not entirely remedy the prior underpayment.  Plaintiffs contend that this lawsuit was the catalyst for PPG's "retro" supplemental payment, and that as such the lawsuit obtained extensive benefits for class members that are not reflected in the settlement payment itself.  For those TMs whose "retro" supplemental payments were under-calculated, the Settlement obtains complete relief.

And *third*, on behalf of all PPG employees who held the TM position in PPG's Home Depot business line in California, Plaintiffs allege that PPG failed to reimburse any portion of the home internet costs of TMs, who were required to have and to use home internet to perform their daily work for PPG.

In addition, Plaintiffs seek penalties under the California Private Attorneys General Act of 2004, California Labor Code section 2698 *et seq.* ("PAGA"), for the foregoing violations.

1    Defendant maintains that its practices have been lawful.  In this unopposed motion, Plaintiffs

2    seek preliminary approval of a settlement agreement settling Plaintiffs' claims.[2]

3    The Settlement is an excellent result for the Plaintiffs, given that they have already received the

4    benefit of the retroactive supplemental overtime payments that PPG made after the filing of the

5    lawsuit.  The Settlement provides for a gross payment of $500,000, plus a separate payment of the

6    employer's share of payroll taxes for the wage portion of the settlement payment.

7    The Settlement readily satisfies the standard for preliminary approval, fairly and appropriately

8    resolving the Plaintiffs' claims.  The eventual final fairness hearing will provide another opportunity

9    for the Court to review the Settlement with the benefit of class members' responses and rate of

10   participation.  Accordingly, Plaintiffs respectfully request that the Court:  (1) grant preliminary

11   approval of the Settlement and order that the California Rule 23 Class Members and federal Fair Labor

12   Standards Act ("FLSA") Class Members be sent notice of the Proposed Settlement in the form of the

13   Notices submitted herewith; (2) certify the California class for purposes of settlement only and approve

14   Plaintiffs Garcia, Cahigal, and Diemer as California Class Representatives and Goldstein, Borgen,

15   Dardarian & Ho and Obermayer Rebmann Maxwell & Hippel, LLP as class counsel; (3) preliminarily

16   approve the requested enhancement payments to the California Class Representatives and to Collective

17   Action Representative Plaintiff Brian Holliday; (4) approve the appointment of KCC Class Action

18   Services, LLC ("KCC") as Settlement Administrator; and (5) schedule a final approval hearing for

19   June 22, 2016, at 2:00 p.m. or as soon thereafter as the matter may be heard.

## II.        PROCEDURAL BACKGROUND

21   On January 22, 2015, Plaintiffs Garcia, Cahigal, Holliday, and Diemer commenced this class

22   and collective action alleging California and federal statutory wage violations, unfair competition in

23   violation of California Business and Professions Code section 17200 *et seq.*, and liability for civil

24   penalties under PAGA.  *See* Compl. (ECF No. 1).[3]

---

[2] Although PPG does not oppose Plaintiffs' motion, and seeks preliminary approval of the settlement agreement, PPG does not adopt or validate the statements or arguments contained herein.  The statements and arguments contained herein are Plaintiffs', not PPG's.

[3] The named plaintiffs were also named plaintiffs in the earlier-filed action *Talamantes v. PPG Industries, Inc.*, 13-cv-4062-WHO.  The *Talamantes* action asserted that PPG's Business Development

2

596882.3

The Complaint defines three California Classes:

"<u>Overtime and Waiting Time Class</u>:" All persons employed by PPG within the State of California as a Territory Manager who either were assigned to Home Depot stores at any time from April 2, 2013 through the trial or were assigned to Lowe's stores at any time from December 15, 2012 through the trial for overtime wages, waiting time penalties, and restitution and an injunction under the UCL.

"<u>2802 Class</u>:" All persons employed by PPG within the State of California as a Home Depot Territory Manager from four years prior to the filing of this complaint through trial.

"<u>Wage Statement and PAGA Class</u>:" All hourly, non-exempt persons employed by PPG within the State of California within one year prior to the filing of this Complaint through the trial for statutory damages and/or penalties from PPG's failure to provide accurate itemized wage statements under California Labor Code 226, all civil penalties under PAGA, and restitution and an injunction under the UCL.

*See Id.* at ¶ 8.

On February 4, 2015, this case was deemed related to the *Talamantes* case. *See* ECF No. 7. On April 3, 2015, Defendant answered the Complaint. *See* ECF No. 15. Additional FLSA class members opted into the case, and there are fourteen named plaintiffs and/or opt-ins in the case. *See* ECF Nos. 6, 10, 11.

The Parties agreed to engage in mediation, and PPG produced extensive records to allow Plaintiffs to determine the scope of the alleged violations, as well as records of the "retro" payments that PPG made shortly after the Complaint was filed. *See* Decl. of Laura L. Ho, Esq., submitted herewith ("Ho Decl.) ¶ 9. As explained in an email to its TMs at the time, the "retro" payment was being made because PPG "recently discovered an error with respect to incentive compensation …. Specifically, … the Company inadvertently did not include the incentive compensation in your overtime pay calculation." *Id*.

Plaintiffs prepared a detailed mediation statement briefing the merits of their claims and setting forth the (remaining) damages exposure. Ho Decl. ¶ 10. On September 15, 2015, the Parties engaged in a mediation with highly-regarded mediator Mark Rudy. *Id.* The mediation resulted in a

---

Representatives ("BDRs") were misclassified as non-exempt up until April 1, 2013, when PPG reclassified them as exempt. On that date, the BDR position was also renamed "Territory Manager," or "TM." The claims in *Talamantes* pertain to the pre-April 1, 2013 time-period, whereas the claims in this action pertain largely to the post-reclassification period.

Memorandum of Understanding.  *Id.*  The Parties negotiated at length over the details of the

agreement, and reached a comprehensive, fully executed settlement agreement on March 10, 2016.  *Id.*

### III.  THE PROPOSED SETTLEMENT TERMS, AND FACTORS IN THE DECISION TO SETTLE

**A.  Proposed Settlement Terms**

**1.  The Settlement Provides Timely, Significant Relief to the Class.**

The Settlement calls for Defendant to pay $500,000, which is almost entirely non-reversionary.

*See* Settlement Agreement ("SA") (Ex. 1 to Ho. Decl.) § 1.19.[4]  Unless more than 10% of the

California Class opts out, Defendant will fund the settlement plus the employer's share of payroll taxes

within 14 days of final approval (or, if any class member presents objections, within 14 days after final

approval and the expiration of the appeal period).  *Id.* at §§ 1.16, 1.18(d), 4.1.

From the $500,000 common fund, the settlement provides for:

- the payment of one-third of the Settlement Amount as attorneys' fees ($166,667) (SA § 1.19(b)) (with the parties agreeing that the amount should be adjusted to $166,665.97 for ease of calculation purposes, *see* Ho Decl. ¶ 12);

- reimbursement of actual litigation costs of not more than $5,000 (SA §1.19(b));

- enhancement payments of $2,000 to each named plaintiff, for a total of $8,000.  (SA § 1.19(c));

- a payment of $2,250 to the California Labor Workforce Development Agency ("LWDA") for the PAGA claims (SA § 1.19(e)); and

- claims administrator charges for mailing the Notice, processing any objections or opt outs, calculating payment, issuing checks, and related tasks, not to exceed $28,500.  SA § 1.19(d); Ho Decl. ¶ 12 & Ex. 2 (claims administrator's bid).

- a reserve fund of $10,000 that, if not used, will be distributed to participating claimants.  SA § 1.19(f).

---

[4] The only exception to the non-reversionary nature of the settlement is that if any of the 122 non-California individuals who have not opted into the case decide not to file a Settlement Claim Form, their unclaimed shares will revert to Defendant.  The full estimated amount to which these 122 individuals are entitled is only $34,341.51.  *See* SA Ex. A-1.  The remainder of the Settlement, including the entire Rule 23 Settlement, is non-reversionary.  Thus, if anything reverts to the Defendants, it is likely to be only a small portion of the $34,341.51 reflecting any eligible non-California TMs who choose not to opt into the settlement, and who thus will not be releasing their claims.  *See* Ho Decl. ¶ 11.

The remaining amount – which Plaintiffs' counsel estimates to be $289,584 ("Net Settlement Amount," which includes the $10,000 reserve fund) – will be devoted to settlement payments to the Plaintiffs.  *See* Ho Decl. ¶ 13.

The Settlement Agreement identifies three distinct groups of Plaintiffs:  *First*, the "Opt-in Plaintiffs" are the Named Plaintiffs and those other individuals who have filed written consents to join this action pursuant to 29 U.S.C. § 216(b).  *See* SA § 1.5; *see also* SA at Ex. A-1 (listing all fourteen Opt-in Plaintiffs).

*Second*, the "FLSA Class Members" are the TMs identified as entitled to supplemental overtime wages in connection with the alleged miscalculation of the regular rate of pay arising from the failure to include non-discretionary bonuses in the regular rate of pay, not including members of the California Rule 23 Class.  *See* SA § 1.6; *see also id.* Ex. A-2 (listing all one hundred and twenty-one (121) FLSA Class Members).  These individuals are all located outside of California.  Because they have not yet opted in, their settlement notice will be accompanied by a Claim Form, which they will be required to submit within forty-five (45) days in order to receive a Settlement Payment.  *See* SA at Ex. F.

And *third*, the California Rule 23 Class Members are all non-exempt employees employed by Defendant (or its subsidiaries or predecessors) in California during the period from January 22, 2011 to September 15, 2015, excluding all Opt-in Plaintiffs and FLSA Class Members.  *See* SA § 1.8.  The Parties have agreed upon the identities of the members California Rule 23 Class Members covered by this case – these eight-hundred-and-nine (809) individuals are called the "Covered California Rule 23 Class Members, and are listed in Exhibit B to the Settlement Agreement.  These employees will be included in the settlement, and will receive a settlement payment, unless they affirmatively opt out.  *See* SA §§ 3.3(c), 4.6.  TMs who worked in California and have an FLSA claim arising from the calculation of their overtime rates but who have not yet opted into the case are members of the California Rule 23 Class, not the FLSA Class.  Ho Decl. ¶ 14.  As such, they will receive their settlement payment unless they affirmatively opt out.  *Id.*

The distribution among the Plaintiffs will be done fairly, with each individual allocated a share of the Net Settlement Amount based on the estimated value of the claims possessed by that individual, as further explained below.  *See* Ho Decl. ¶ 33-37.

### 2. The Settlement Process Provides Fair Notice to the California Class and FLSA Class, and the Scope of the Release Is Appropriate.

#### a. Rule 23 California Class.

An agreed-upon notice (the "California Class Notice") will be sent to the 809 Covered California Rule 23 Class Members.  *See* SA § 3.3 & Ex. D.  The notice describes the litigation, the terms of the Settlement, and each California Rule 23 Class Member's options with respect to participating in the Settlement.  *Id.*  The California Class Notice provides information regarding the final approval hearing and how California Rule 23 Class Members can obtain additional information, object, or opt out.  *See* Notice §§ 5, 9, 10.  The notice explains that California Rule 23 Class Members who do not timely opt out will be members of the Class for settlement purposes, and will release the claims asserted in the lawsuit, as well as any claims that could have been asserted based upon the facts alleged in the complaint.  *Id.* § 5.A.  The Class Notice will inform each recipient of his or her estimated settlement payment.  *Id*. at 1.

All California Rule 23 Class Members, unless they opt out, will receive a check in the mail. SA §§ 3.3(c), 4.6(a).  The back of the check will state that by endorsing the check, the payee agrees to release his or her claims; if the check is not executed, then the employee's FLSA claims, and those claims only, will not be released.  *See* Ho Decl. ¶ 17 (explaining why requiring release of FLSA claims under the settlement is appropriate); *see also Procedural Guidance for Class Action Settlements* (N.D. Cal. website: www.cand.uscourts.gov/ClassActionSettlementGuidance) (*"N.D. Cal. Class Settlm't Guidance"*) ¶ 1(c) (requiring preliminary approval motion to discuss any difference between the claims released and the claims set out in the complaint).  Class members who affirmatively opt out will not receive a settlement payment, but also will not be subject to any release of claims.  *See* Notice at § 5.B.  As explained in the Notice, California Class members (unless they opt out) may object to the Settlement.  *Id*. at § 5.C.

### b. FLSA Class.

An agreed-upon notice of Notice of Settlement of Collective Action Lawsuit will be sent to all FLSA Class Members, together with an Opt-in Plaintiff Settlement Claim Form and Release.  *See* SA § 3.2(b) & Exs. E & F.  The notice describes the litigation, the terms of the Settlement, and each FLSA Class Member's options with regard to participating in the Settlement, *i.e.*, either (i) submit a timely Opt-in Claim Form and participate in the Settlement, or (ii) do nothing and do not participate in the settlement.  The notice will explain how FLSA Class Members can obtain additional information about the litigation and the settlement. *See* Notice §§ 11.  The notice will explain that FLSA Class Members who return a properly executed Opt-in Claim Form postmarked within forty-five days following the date of initial mailing shall become Participating Claimants.  *Id*. § 3.2(d).  The notice explains that by opting in, FLSA Class Members will release their FLSA claims in exchange for a settlement payment. Notice § 6.  If FLSA Class Members choose not to opt in, they will not release any claims, as the notice explains.  *Id.*  The notice will also inform each recipient of his or her estimated settlement payment if he or she participates in the settlement.  *Id*. at 1.

### c. Opt-in Plaintiffs.

Notice will not be sent to the Opt-in Plaintiffs, who have already opted into this case as Plaintiffs and agreed to be bound by the settlement or judgment.

As a result of PPG's voluntary "retro" supplemental overtime payment, six non-California Opt-in Plaintiffs have been fully compensated, and are entitled a Settlement payment of $0.  SA. Ex A-1. Ho Decl. ¶ 16.  Plaintiffs' Counsel has spoken with each of these individuals and explained that the "retro" supplemental overtime payment compensated them for the amount owed.  *Id.*  Each such Opt-in Plaintiff was also a plaintiff in the *Talamantes* action, in which each received a settlement allocation of over $27,000.  *Id.*

## B. Factors in Plaintiffs' Decision to Settle

### 1. PPG's Voluntary Payment of Supplemental Overtime in Response to Plaintiffs' Pre-Suit Demand Has Accomplished Much of the Relief Sought, and the Settlement Fully Recovers the Remaining Overtime Owed.

PPG's voluntary "retro" supplemental overtime payment provided TMs across the country with a significant portion of the relief sought in this lawsuit. Ho Decl. ¶ 19.  The payment provided the full

7

amount of overtime owed to many TMs who would otherwise have been class members. *Id.* The overtime claims that remain (*i.e.*, those that were not fully remedied by PPG's retro payment) arise from the allegation that PPG's calculations incorrectly assumed that each TM worked forty hours, every single week of the year, which resulted in an artificially low "regular rate of pay" for some employees based upon their dates of employment. *Id.* The remaining damages arising from that alleged miscalculation are relatively small, and the settlement will fully reimburse the TMs whose claims still have value (and will also pay them full liquidated damages), making settlement of these claims the logical choice for Plaintiffs. *Id.*

### 2. On Other Claims, the Uncertain Merits Outcome Favors Settlement.

#### a. Wage Statement and Direct Deposit Claims.

With respect to Plaintiffs' wage statement violation claims, even though Plaintiffs believe that there can be no dispute that the wage statements were non-compliant, there is uncertainty that Plaintiffs would succeed in establishing entitlement to relief. *See, e.g.*, *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011) ("To recover damages under section 226, subdivision (e), an employee must suffer  injury as a result of a knowing and intentional failure by an employer to comply with the statute."). There is risk that Plaintiffs would be unable to establish actual injury on a classwide basis for some or all of the wage statement violations. *See* Ho Decl. ¶ 20. In addition, although Plaintiffs believe they would be able to establish that the non-compliance was knowing and intentional, they have not yet made such a showing. *Id.*

With respect to Plaintiffs' direct deposit claim under California Labor Code section 212(d), Plaintiffs have not yet established that direct deposit was a mandatory condition of employment. Ho Decl. ¶ 21. There is limited case law on this issue, and case law that does exist relies on a Division of Labor Standards Enforcement ("DLSE") opinion letter, which is not entitled to deference. *See, e.g.*, *Fobroy v. Video Only, Inc.*, No. C-13-4083 EMC, 2014 WL 6306708, at *7 (N.D. Cal. Nov. 14, 2014) (denying summary judgment on direct deposit claim where fact dispute existed as to whether direct deposit was a mandatory condition of employment, citing DLSE opinion letter).

b.      **Section 2802 Claims for Reimbursement of Home Internet Expenses.**

The subset of Plaintiffs who possess this claim (*i.e.*, TMs in the Home Depot business line) have not yet demonstrated that they were required to perform work for PPG using their personal internet service, which is a required showing to establish liability.  *See Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1144 (2014) ("If an employee is required to make work-related calls on a personal cell phone, then he or she is incurring an expense for purposes of section 2802.").  PPG will likely contend that such work was not required, and although Plaintiffs expect to prevail, the uncertainty weighs in favor of settlement for both sides.  Ho Decl. ¶ 22.

3.      **Uncertainties about Class Certification and Willfulness vs. Good Faith Favor Settlement.**

Although Plaintiffs are confident that each of their proposed classes would be certified absent settlement, PPG can be expected to offer arguments that individualized inquiries would be necessary.

With respect to Plaintiffs' Section 2802 claims, Defendants may argue that an individualized assessment will be necessary to determine whether each class member used his home internet for work-related purposes.  *See* Ho Decl. ¶ 23.  Even though Plaintiffs believe that such use can be demonstrated on a classwide basis, the uncertain outcome of class certification weighs in favor of settlement.  *Id.*  Similarly, with respect to Plaintiffs' wage statement claims, PPG may cite to variations in employees' ability to demonstrate injury.  *Id.*

Plaintiffs' claim for liquidated damages under the FLSA arising from Defendants' failure to pay all supplemental overtime owed may be subject to a good faith defense.  *See* 29 U.S.C. § 260 (employer has burden of establishing good faith defense to liquidated damages); *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 298 (9th Cir. 1996) (if employer establishes "honest intention to ascertain and follow" the FLSA, and had "reasonable grounds for believing that its conduct complied," court has discretion to deny liquidated damages).

Similarly, Defendant can be expected to assert a "good faith" defense to Plaintiffs' claims under sections 203 and 226 of the California Labor Code.  *See* Ho Decl. ¶ 24.  If Defendants were to succeed, Plaintiffs' claims under Labor Code sections 203 and 226 would fail.  All of these considerations favor settlement.

9

596882.3

**4.     The Delay and Expense of Proceeding to Trial and Post-Trial Appeals Favors Settlement.**

If this settlement is finally approved, Plaintiffs will receive certain payments shortly thereafter. *See* Ho Decl. ¶ 25; *see also* Exs. A-1, A-2 & B to Settlement Agreement (stating anticipated settlement payment to each plaintiff).  Some FLSA Class Members who were particularly affected by the overtime under-calculation will receive nearly $2,000.  *See* Ho Decl. ¶ 25.  Likewise, the most-affected California TM will receive over $2,100.  *Id.*  For all TM Plaintiffs, their settlement payment will be *in addition to* the voluntary "retro" supplemental overtime payments that many of them already received after the filing of this suit.  *Id.*  For California class members with wage statement claims for the full statutory period, the Settlement provides nearly $1,000 – a strong result for a wage statement violation, particularly prior to proof of injury.  *Id.*

On the other hand, if Plaintiffs were to elect not to settle, recovery would be uncertain on many claims, and recovery on the overtime claims would be no greater after a successful trial than in this settlement.  Ho Decl. ¶ 26.  Plaintiffs would spend time and resources responding to discovery, being deposed, giving declarations, assisting their attorneys with motion practice, and ultimately appearing at trial.  *Id.*  This case would not conclude at the trial level for approximately two years, and even if Plaintiffs prevailed at trial, an appeal would likely follow.  *Id.*  The average civil appeal in the Ninth Circuit takes approximately two years, meaning that absent a Settlement, Plaintiffs could not expect to recover, if at all, for at least 4 years, and possibly longer.  *Id.*  This strongly favors settlement.

**5.     Interest and Penalties**

The Parties agree that for participating claimants who are from California, one third of the settlement payment will be considered wages, and the remaining two thirds will be considered penalties and interest.  SA § 4.6(a).  This estimate is reasonable, because penalty claims asserted are a significant portion of the estimated damages exposure under California law, and because interest is 10 percent.  *See Bell v. Farmers Ins. Exch.*, 135 Cal. App. 4th 1138, 1150 (2006) (affirming 10 percent prejudgment interest rate on unpaid wages); Ho Decl. ¶ 27.  For participating claimants who are not from California, the Parties agree that one half of the settlement payment will be considered wages, and one half will be considered liquidated damages.  SA § 4.6(a).  This is reasonable, because non-

10

California claimants are asserting FLSA claims, which give rise to a claim for liquidated damages equal in amount to their claim for unpaid wages.  *See* 29 U.S.C. § 216(b).

Absent the Settlement, however, Plaintiffs would be at risk of failing to recover interest and penalties, in full or in part.  *See* Ho Decl. ¶ 27.

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT OF CALIFORNIA CLASS CLAIMS

The Settlement is fair, adequate and reasonable, and certification of the California classes for settlement purposes is merited.

### A.   Class Action Settlements Are Encouraged.

Federal law strongly encourages settlements in the context of class actions.  *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).  Both sides believe their best interests are served by entering into the Settlement Agreement, rather than proceeding to trial and a likely appeal. Preliminary approval is proper because this settlement falls within the range of reasonableness for possible final approval.  *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

### B.   Plaintiffs Contend that the Settlement Satisfies the Rule 23 Requirements.

For settlement purposes, Plaintiffs submit that the California classes satisfy the criteria of Fed. Rule Civ. P. 23(a):  numerosity, typicality, adequacy, and commonality.  The proposed settlement classes are the same as the three classes proposed in the complaint, except that the Settlement Agreement specifies the PPG entities at which the class members were employed and lists the specific individuals covered by the settlement, so as to eliminate any uncertainty about who is covered by the settlement.  *See* SA § 1.9 & Ex. B; *N.D. Cal. Class Settlm't Guidance* ¶ 1(a).

#### 1.   Numerosity.

A class of 40 presumptively satisfies the numerosity requirement.  *See Nelson v. Avon Prods., Inc.*, No. 13-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015).  Here, with one exception, the number of California plaintiffs in each class exceeds 40, *see* Ho Decl. ¶ 28, and thus numerosity is satisfied.  The one exception is that there are only 18 California claimants with a remaining supplemental overtime claim (many other would-be class members were compensated in

1   full by PPG's "retro" supplemental payment). *Id.* For several reasons the Court should conclude that

2   numerosity is satisfied as to this sub-class, for settlement purposes. The "numerosity requirement

3   requires examination of the specific facts of each case and imposes no absolute limitations." *See Gen.*

4   *Tel. Co. of the Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980). There is "no magic number for

5   determining when too many parties make joinder impractical," and "the absolute number of class

6   members is not the sole determining factor." *See In re Live Antitrust Litig.*, 247 F.R.D. 98, 116 (N.D.

7   Cal. 2007) (quotations omitted). The numerosity requirement exists largely to ensure that the due

8   process rights of class members are not unnecessarily placed at risk: class actions have the potential to

9   bind absent parties adversely without a guarantee that the absent parties have received actual notice.

10  *See* Rule 23 advisory comm. note (explaining that the "best practicable" notice requirement is

11  "designed to fulfill the requirements of due process"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

12  808 (1985) (explaining that class actions are an exception to the rule that only parties will be bound by

13  a judgment, creating a need to protect the due process rights of absent class members). Here, that risk

14  is negligible: a settlement has already been reached, and the result is favorable to the sub-class

15  members: the sub-class members will automatically receive a check in the mail if the settlement is

16  approved. The Claims Administrator will be taking steps to ensure that valid addresses are found for

17  each class member, as described below. And the members of the California overtime subclass will

18  have their rights adjudicated in any event because they are members of *other* sub-classes that satisfy

19  the numerosity requirement. Defendant does not object to certification for settlement purposes. Thus,

20  in this particular case, separate joinder of the 18 individuals would be impractical, and the Court

21  should conclude that numerosity is satisfied.

22        **2.      Typicality.**

23        The claims and defenses of the representative parties are typical of the classes. Specifically,

24  Plaintiff Cahigal is typical of the overtime class because he claims that his overtime wages were

25  undercalculated by PPG's failure to include his non-discretionary bonuses when determining his

26  "regular rate of pay." Ho Decl. ¶ 29. Plaintiffs Cahigal, Diemer, and Garcia are typical of the Section

27  2802 class because they claim that they were not reimbursed for the necessary business expense of

28  home internet service. *Id.* And Plaintiffs Cahigal and Garcia are typical of the wage statement and

PAGA class, because they claim that their wage statements were non-compliant and they were required to accept payment via direct deposit.  *Id.*; *see generally Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 425 (N.D. Cal. 2013) ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

### 3.    Adequacy.

Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4) because, as demonstrated in counsel's declaration, the named Plaintiffs have no conflicts of interest with the Class and are represented by experienced counsel.  *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 535 (N.D. Cal. 2012); Ho Decl. ¶¶ 30, 43-48; *see also Talamantes*, 13-cv-4062-WHO, ECF No. 121 (Final Approval Order, dated January 6, 2016) (appointing these same two firms as Class Counsel in related case).  Accordingly, the Court should appoint Plaintiffs Cahigal, Garcia, and Diemer as Class Representatives and Goldstein, Borgen, Dardarian & Ho and Obermayer, Rebmann, Maxwell & Hippel, LLP as Class Counsel.

### 4.    Commonality.

Plaintiffs contend that common questions predominate over individual issues with respect to each class.  With respect to supplemental overtime, Defendant engaged in the same error in calculating the regular rate of pay for all class members, so liability turns on common issues of law and fact.  With respect to reimbursement of home internet expenses under California Labor Code section 2802, PPG had a uniform policy of failing to reimburse for home internet expenses, and evidence that it was necessary for TMs to have internet access at home to perform their jobs is subject to common proof, including company documents instructing TMs classwide to perform certain tasks that would require an internet connection.  With respect to mandatory direct deposit, Plaintiffs challenge a uniform company policy.  And with respect to wage statement violations, Plaintiffs are challenging the legality of wage statements that were uniform throughout the class (or throughout subclasses to reflect the several violations that occurred on class members' wage statements).  As to each claim, Plaintiffs

1   assert that their case will stand or fall with respect to the entire class, making class certification

2   appropriate.  *See, e.g.*, *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 442 (C.D. Cal. 2014).

3   **C.      The Settlement Is Fair, Adequate and Reasonable.**

4          Preliminary approval is appropriate if the proposed settlement is "fair, adequate and

5   reasonable."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Ma v.*

6   *Covidien Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *3 (C.D. Cal. Jan.

7   31, 2014); *Boyd v. Avanquest N. Am. Inc.*, No. 12-cv-04391-WHO, 2015 WL 4396137, at *2 (N.D.

8   Cal. July 17, 2015) ("A preliminary approval of a settlement and notice to the proposed class is

9   appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive

10  negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

11  representatives or segments of the class, and falls within the range of possible approval.") (quotations

12  omitted); *see also* Fed. R. Civ. P. 23(e).  Settlements should be approved, as a matter of discretion, if

13  they are non-collusive and take into account "all the normal perils of litigation as well as the additional

14  uncertainties inherent in complex class actions."  *In re Beef Indus. Antitrust Litig.*, 607 F. 2d 167, 179-

15  80 (5th Cir. 1979).  Relevant factors include "the strength of Plaintiffs' case, the risk, expense,

16  complexity and likely duration of further litigation, the risk of maintaining class action status through

17  trial, the amount offered in settlement, the extent of discovery completed and the stage of the

18  proceedings, the experience and views of counsel, the presence of a governmental participant, and the

19  reaction of the class members to the proposed settlement."  *Class Pls. v. City of Seattle*, 955 F.2d 1268,

20  1291 (9th Cir. 1992); *Avanquest N. Am.*, No. 12-cv-04391-WHO, 2015 WL 4396137, at *2 (N.D. Cal.

21  July 17, 2015) (same).  When a settlement is reached, approval should be denied "only with

22  considerable circumspection."  *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D. Pa. 1975).

23  Here, the factors weigh heavily in favor of granting preliminary approval.

24          **1.      The Settlement Is Non-Collusive, and Is the Product of Aggressive Litigation that**
25                  **Caused Defendant to Pay Overtime Owed, Followed by an Arm's Length**
                    **Mediation.**
26
27          The merits of Plaintiffs' supplemental overtime claims are apparent from PPG's action

28  following the filing of Plaintiffs' lawsuit, which was to make voluntary, retroactive payments to many

596882.3

of its TMs to correct a calculation error.  Plaintiffs pursued the case all the same, in part because they alleged that even the voluntary payments were not fully compensatory, and in part to pursue Section 2802 (reimbursement) and 226 (wage statement) violations.  In Plaintiffs' view, the strength of their claims combined with the reduced exposure resulting from PPG's voluntary payment made early settlement possible, and resolution was reached with the assistance of a highly experienced class action mediator, Mark Rudy.  *See* Ho Decl. ¶¶ 2, 9-10; *see also Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Plaintiffs' counsel were able to resolve the case efficiently by obtaining extensive informal discovery from Defendant that allowed Plaintiffs' counsel to assess the value of Plaintiffs' claims, and by fully briefing the merits of the dispute in a lengthy mediation brief.  *See supra* §II; Ho Decl. ¶¶ 9-10.

Plaintiffs' Counsel believe the Settlement of $500,000 plus the employer's share of payroll taxes is an excellent result for the value of the claims, especially given that a settlement was reached efficiently – approximately one year after the case was filed.  Ho Decl. ¶ 2.

Plaintiffs and the Class have been represented by experienced counsel, who have had numerous wage and hour class action settlements approved by federal and state courts and who have repeatedly been approved as Class Counsel, including by this Court in the *Talamantes* case.  Ho Decl. ¶¶ 42-47 & Ex. 4.  Among other advantageous terms, Counsel ensured that:  the settlement payment is non-reversionary for all California Class Members and requires no affirmative opt-in for those class members (*i.e.*, maximizing the payments to participating Class members), and is non-reversionary only to the extent that non-California employees choose not to opt in and release their FLSA claims; Defendants will pay the employer's share of payroll taxes; and settlement payments will be paid promptly.  Ho Decl. ¶¶ 12-13.

15

596882.3

1

2. **The Strength of Plaintiffs' Case Should Be Weighed Against the Risk, Expense, Complexity and Duration of Further Litigation, and the Risk of Achieving and Maintaining Class Action Status.**

2

3

As discussed in Section III, *supra*, Plaintiffs believe the case has significant strengths, but that

4

there are also considerable risks to further litigation on certain claims.  In addition, the fact that the

5

overtime relief sought has been obtained weighs in favor of settlement.

6

3. **The Amount Offered in Settlement in Light of the Claims Alleged Weighs Strongly in Favor of Preliminary Approval.**

7

8

The Settlement will provide the California Rule 23 and FLSA Class Members with payments

9

that are significant given the type of violations at issue.  Plaintiffs who had wage statement violations

10

and direct deposit claims throughout the relevant period will receive approximately $1,000.  California

11

Plaintiffs with the full set of claims will receive as much as $2,100.  Plaintiffs whose only injury was a

12

mandatory direct deposit will receive the minimum allocation of $10, which counsel believes is a fair

13

and reasonable settlement result.  *See* Ho Decl. ¶ 32.

14

The settlement monetary relief compares extremely favorably with Plaintiffs' counsel's

15

estimated full relief for the Class.  TMs with supplemental overtime claims are receiving 100% relief

16

on those claims, given the unequivocal merit of the claims.  Ho Decl. ¶ 32; *see also N.D. Cal. Class*

17

*Settlm't Guidance* ¶ 1(d).  Every TM with an expense-reimbursement claim is receiving 50% of the

18

relief calculated, which Plaintiffs' counsel believes is a reasonable discount to account for the risk of

19

prevailing on the class certification and merits of that claim.  Ho Decl. ¶ 32.  Finally, the remainder of

20

the class has a claim only for statutory penalties (including PAGA penalties) for wage statement

21

violations, waiting time penalties, and mandatory direct deposit.  Given that the award of such

22

penalties is discretionary, and given the absence of out-of-pocket monetary harm experienced by those

23

class members, Plaintiff's counsel believes this award is a reasonable, positive result.  *Id.*; *cf.*

24

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (courts may assess reasonableness

25

of settlement amount without taking into account exposure for penalties, such as treble damages).

26

The successful result here compares favorably with those in other settlements that have been

27

approved.  *Cf. Ma*, 2014 WL 360196, at *2, 5 (settlement for 9.1% of total value was within the range

28

of reasonableness); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804,

16

596882.3

at *5 (C.D. Cal. Nov. 18, 2014) (recovery of 36% of full relief was appropriate given the risk in litigating an exemption defense without clear governing authority).

### 4. Given the Nature of the Claims and the Information Disclosed by Defendant, Plaintiffs and Counsel Are Well-Situated to Arrive at a Fair Settlement.

The claims at issue are relatively straightforward.  Defendant has provided the information needed to calculate the supplemental overtime owed, the number of allegedly erroneous wage statements issued, the number of employees subject to the alleged direct deposit requirement, and the number of TMs eligible to claim unreimbursed internet expenses.  With this information, Plaintiffs were able to brief the merits of their claims and the damages exposure to the mediator, and the mediator was able to assist both Parties in understanding the likely value of the claims at issue.  Thus, the Parties are well-informed and prepared to reach this Settlement.

### 5. The Experience and Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

Counsel for Plaintiffs have represented tens of thousands of employees in wage/hour class actions like this one, and have had settlements approved repeatedly by District Courts in the Ninth Circuit and other courts.  Ho Decl. ¶¶ 2, 44-47.  In the view of counsel, this settlement is an excellent result for class members.  *Id.* ¶ 2.

### 6. All Additional Settlement Terms are Fair.

As set forth below, the settlement is fair and reasonable with respect to:  (a) the allocation of payments among class members, (b) the enhancements to the Class Representatives, and (c) the requested attorneys' fees.  In addition, Plaintiffs' Counsel selected a reputable and competitive claims administrator, KCC, which handled the *Talamantes* case and therefore is well-positioned to handle this case efficiently.  Ho Decl. ¶ 39.  This amount, which will be paid from the gross settlement, is reasonable in relation to the amount of the recovery, especially given the large number of class members, and is well within the range of normal administration costs for cases in this district.  *Id.*; *see also N.D. Cal. Class Settlm't Guidance* ¶ 2.

a.    **The settlement allocation fairly and precisely compensates plaintiffs to reflect the value of the claims they possess.**

Settlement allocations are based on a formula that is tailored to reflect the value of each individual class member's claims.

Supplemental overtime claims were awarded at the full value:  The entire amount of the estimated overtime owed, doubled to account for liquidated damages. Ho Decl. ¶ 34.  To calculate the value of these claims, Class Counsel took into account (a) the number of overtime hours that each TM was recorded by PPG as having worked during the relevant period; (b) the dollar amount of the supplemental overtime payment that PPG made to each TM in early 2015 in PPG's attempt to remedy its prior error; and (c) each TM's time in a class position during the liability period.  *Id.*  Using this information, counsel estimated the amount by which each TM was underpaid by the retro supplemental payment (and determined whether, in fact, a given TM was underpaid).  In addition, TMs in California will receive interest on the unpaid amount.  *Id.*

With respect to the claim for business reimbursement expenses, which is possessed by Home Depot TMs in California, each eligible TM was allocated a settlement payment of approximately $10/month worked in the position within the statutory period. Ho Decl. ¶ 35.  This is fifty-percent of the estimated full value of the claim ($20/month), which Plaintiffs' counsel believes is a reasonable discount to reflect the risk that such a claim would not be certified and/or proven on the merits.  *Id.*

Wage statement violation claims (Cal. Lab. Code § 226), waiting time penalty claims (Cal. Lab. Code § 203), and PAGA penalties were awarded at a reduced rate based on the proportion of the remainder of the net settlement fund attributable to their individual claims.  Ho Decl. ¶ 36.  In other words, Plaintiffs' counsel calculated exactly the number of violations that each class member experienced (based upon pay records provided by Defendant), and then distributed the remaining settlement funds *pro rata* according to the relative value of each class member's claim.  *Id.*  Plaintiffs also adjusted the formula by setting a $10 "floor" as the minimum amount to be received by each participating class member to avoid *de minimus* allocations.  *Id.* ¶ 33.

The result of this allocation method was a nuanced, accurate allocation of settlement funds to each plaintiff based on the claims he or she possesses.  Ho Decl. ¶ 37.  In the view of Plaintiffs'

1    counsel, this is the fairest possible method of allocation in this case. *Id.*; *see also N.D. Cal. Class*

2    *Settlm't Guidance* ¶ 1(e).

3                    **b.    The proposed enhancement payments are fair**

4            The proposed enhancement payments of $2,000 each (totaling $8,000) for the three California

5    Class Representatives and Collective Action Representative Brian Holliday are modest compared with

6    this District's presumptively reasonable $5,000 service award amount and other approved settlements.

7    *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015); *Dyer v. Wells Fargo*

8    *Bank, N.A.*, 303 F.R.D. 326, 335-36 (N.D. Cal. 2014) (approving $10,000 service award because the

9    plaintiff expended a significant amount of time prosecuting the action despite not signing a general

10   release or facing the risk of industry backlash); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC,

11   2012 WL 381202, at *8 (N.D. Cal. Feb. 6, 2012) (awarding service payment of $12,500 where the

12   plaintiff spent approximately 100 hours prosecuting the case); *Bellinghausen v. Tractor Supply Co.*,

13   No. 13-cv-02377-JSC, 2015 WL 1289342, at *17 (N.D. Cal. Mar. 20, 2015) (approving service award

14   of $15,000 where plaintiff spent 73 hours assisting counsel and faced industry notoriety for bringing

15   the lawsuit).[5]

16           The factors courts use in determining service awards include:  (1) a comparison between the

17   service awards and the range of monetary recovery available to the class; *see Ingram v. The Coca-Cola*

18   *Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 204 (S.D.N.Y.

19   1997); (2) time and effort that representatives put into the litigation; *see Van Vranken v. Atl. Richfield*

20   *Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); (3) whether the litigation will further the public policy

21   underlying the statutory scheme, *see Roberts*, 979 F. Supp. at 201 n.25; and (4) risks of retaliation, *see*

22   *id.* at 202.

23           All of the above factors support the service award requested here.  The reasonable service

24   awards of $2,000 each for the named Plaintiffs are intended to compensate them for the critical role

25

26   _____

27   [5] Plaintiffs' requested service awards are also less than awards approved by courts in other settlements.
     *See, e.g., Boyd*, 2014 WL 6473804, at *7 (approving incentive award of $15,000); *Ozga v. U.S.*
     *Remodelers, Inc.*, No. C 09-05112 JSW, 2010 WL 3186971, at *3 (N.D. Cal. Aug. 9, 2010) (awarding
28   $10,000 incentive award to both named plaintiffs); *In re Cellphone Fee Termination Cases*, 186 Cal.
     App. 4th 1380, 1393-94 (2010) (approving incentive awards of $10,000 to each class representative).

they played in stepping forward to bring this case, and the time and effort they expended to help secure

the result obtained for the Class.  In agreeing to serve as class representatives, these Plaintiffs formally

agreed to accept the responsibilities of representing the interests of all Class Members.  Ho Decl. ¶ 38.

The Plaintiffs who are still employed by Defendant took on the additional risk of retaliation, and those

who are not took on the danger of negative notoriety resulting from suing their former employer.  *Id.*

Plaintiffs' proposed enhancement payments will be the subject of a separate motion supported

by admissible evidence and filed prior to the opt-out/objection deadline.  *Id*.

### c. <u>Attorneys' fees of one third of the common fund are justified.</u>

Plaintiffs will file a separate motion for the requested attorneys' fees, costs, and expenses

fourteen (14) days prior to the opt-out/objection deadline so that California Rule 23 Class Members

will have an opportunity to inspect Plaintiffs' Counsel's fee application prior to the deadline for

submitting objections or requests for exclusion.  Under the Settlement, Plaintiffs' Counsel will not seek

more than one-third of the gross settlement amount of $500,000 (*i.e.*, $166,667), plus actual out-of-

pocket expenses in prosecuting this lawsuit, which will not exceed $5,000.  SA § 1.19(b).  In the

instant motion, Plaintiffs do not seek approval of the fees and costs, but only ask that the Court include

the maximum potential fee and cost request in the Notice so that the Class can be informed of it.

Plaintiffs are entitled to recover their attorneys' fees and costs for prevailing on their asserted

claims.  *See* Cal. Lab. Code §§ 1194(a), 2699(g)(1); Cal. Code Civ. Proc. § 1021.5(a).  A plaintiff is a

prevailing party where he obtains a successful settlement.  *See Farrar v. Hobby*, 506 U.S. 103, 111

(1992); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089

(9th Cir. 2010) ("Litigation that results in an enforceable settlement agreement can confer 'prevailing

party' status on a plaintiff.").

The traditional method for calculating a reasonable award for attorneys' fees and costs is to

employ the lodestar approach.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

2011).  "The lodestar figure is calculated by multiplying the number of hours the prevailing party

reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

hourly rate for the region and for the experience of the lawyer."  *Id*.  The lodestar method is

particularly appropriate for class actions brought under fee-shifting statutes and that provide injunctive

1    relief that cannot be easily monetized.  *Id*. at 941.

2          While the lodestar figure is presumptively reasonable, courts may adjust it upward or

3    downward by an appropriate positive or negative multiplier based on several reasonableness factors,

4    "including the quality of the representation, the benefit obtained for the class, the complexity and

5    novelty of the issues presented, and the risk of nonpayment."  *Hanlon v. Chrysler Corp.*, 150 F.3d

6    1011, 1029 (9th Cir. 1998).  "Foremost among these considerations, however, is the benefit obtained

7    for the class."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.

8          Here, the attorneys' fees and costs award sought is preliminarily reasonable because it

9    represents a *negative* multiplier of 0.70 times Plaintiffs' Counsel's anticipated lodestar at the

10   conclusion of the case.  *See* Ho Decl. ¶ 41.  Plaintiffs' Counsel have a current lodestar of $181,606.50,

11   and expect to incur an additional 100 hours of time to bring this case to a close, including:  appearing

12   at the preliminary approval hearing; preparing a motion for fees, costs and enhancements with

13   supporting declarations from counsel and the four class representatives; addressing class member

14   inquires and responding to any objections; preparing a final approval motion with supporting

15   declarations from counsel and the claims administrator; appearing at the final approval hearing; and

16   ensuring that the settlement funds are timely and correctly disbursed.  *Id.*  With the anticipated

17   additional work, the ultimate lodestar is expected to be approximately $236,106.50.  *Id.*  Counsel's

18   lodestar is supported by detailed and contemporaneously-maintained billing records of time reasonably

19   spent by Plaintiffs' Counsel litigating this case for over a year based on hourly rates that are

20   commensurate with the rates of practitioners with similar experience within the California legal

21   market.  *Id.*  Courts have approved similar attorneys' fees requests in other wage and hour class action

22   settlements.  *See, e.g.*, *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826,

23   at *27-29 (N.D. Cal. May 13, 2011) (awarding $11,307,449.62 in attorneys' fees based on lodestar

24   method where class fund totaled $27 million).

25          The other method of assessing the reasonableness of an attorneys' fee award is through the

26   "common fund" approach.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.  The

27   "benchmark" for a reasonable percentage-of-the-fund award is twenty-five percent, from which courts

28   may depart either upward or downward if the "special circumstances" of the case justify a departure.

*Id.* While a downward departure may be appropriate in a "megafund" case where awarding 25% would yield windfall profits for class counsel in light of the hours actually spent, *id.*, an upward departure is often appropriate for smaller class funds below $10 million, particularly when awarding the benchmark would undercompensate counsel for their time spent. *See, e.g.*, *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often result in fees above 25%."). Factors that justify an upward departure include the quality of the result for the class, the effort, experience and skill of counsel, risk of non-payment assumed by counsel, and comparison with counsel's lodestar. *See, e.g.*, *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, *et al.*, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005).

The reasonableness of Plaintiffs' fee request is demonstrated by the fact that it represents a negative multiplier of 0.70 times their lodestar. Ho Decl. ¶ 41; *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 & n.6 (9th Cir. 2002) (affirming lodestar multiplier of 3.65 in light of complexity and risk of case and surveying 34 class common fund settlements to find that 83% of multipliers were in the 1x- to 4x-range).

In addition, Plaintiffs' Counsel collectively have incurred and expect to incur up to $5,000 in actual out-of-pocket litigation costs and expenses once this Settlement is completed. Ho Decl. ¶ 42. These expenses include the types of litigation costs that courts routinely approve, including filing fees, research expenses, document processing costs, and others. *Id.* When Plaintiffs file their fee motion, they will provide the Court with detailed information concerning their litigation costs.

Accordingly, the Court should preliminarily approve Plaintiffs' ability to seek their requested attorneys' fees and costs award for purposes of inclusion in the class notice materials.

### d.      The Notice to the Class is sufficient.

The proposed settlement Notices to the Covered California Rule 23 Class Members and the FLSA Class Members, as well as the proposed method of distribution of the Notices, are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The notices comply with the Northern District's guidelines. *See N.D. Cal. Class Settlm't Guidance* ¶ 3. The proposed notices will be sent via first-class mail to the last known mailing address of each FLSA Class Member or California Rule 23 Class Member, and prior to mailing the Class Notices, the

1    Claims Administrator will consult the U.S. Postal Service's National Change of Address Database (or

2    similar customarily used search method) to review the accuracy of and, if possible, update a Class

3    member's mailing address.  SA § 3.3(b).  The Notice provides case and settlement details and the

4    options available to Class members so they can make an informed decision.  *See supra* § III.B.2.

5         As the Notice to Covered California Rule 23 Class Members explains, such individuals will

6    automatically be included in the settlement and receive a payment (if the settlement is approved)

7    unless they affirmatively opt out.  If they elect to remain a part of the Class, they have the option of

8    submitting a written objection to the settlement.  The proposed opt-out and objection period of thirty

9    days is appropriate here, and is the same period that this Court ordered in the related *Talamantes* case

10   (3:13-cv-4062, ECF No. 121).  *See, e.g.*, *Dennis v. Kellogg Co.*, No. 09-CV-1786-IEG (WMC), 2013

11   WL 1883071, at *8 (S.D. Cal. May 3, 2013) (notice to be mailed 60 days before final approval hearing,

12   with exclusions, if any, due 30 days before hearing); *Williams v. Costco Wholesale Corp.*, No. 02 CV

13   2003 IEG (AJB), 2010 WL 761122, at *7 (S.D. Cal. Mar. 4, 2010) (approving thirty-day notice and

14   opt-out period in misclassification case); *Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF

15   (SHx), 2008 WL 5281665, at *6 (C.D. Cal. Dec. 15, 2008) (same).  There is no need for the Covered

16   California Rule 23 Class Members to submit any claim form to participate in the settlement, so there is

17   no need to lengthen the Notice period as there would be in a claims-made settlement.

18        The Notice to the FLSA class members, on the other hand, does require recipients affirmatively

19   to opt in to receive a settlement payment.  The Notice makes this clear.  *See* SA Ex. E.  The period for

20   opting in to the case is longer – forty-five (45) days – to ensure that recipients have an adequate chance

21   to submit their claim forms.  *Id.* § 3.2(d).  Like the California Notice, the FLSA Notice clearly explains

22   the effect of opting into the case (the receipt of a settlement and corresponding release of claims) as

23   well as the effect of doing nothing (no receipt of a settlement, but claims will not be released).

24        Thus, the California Rule 23 Class Notice complies with Rule 23.  Fed. R. Civ. P. 23(e)(1) (for

25   settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be

26   bound by the proposal").  And the FLSA Class Notice appropriately protects the rights of non-

27   California employees with FLSA claims.

28

**D.     At Final Approval, the Settlement Should Be Approved as Fair and Reasonable to FLSA Class Members.**

When an employee brings a private action for wages under the FLSA, 29 U.S.C. § 216(b), the parties must present any proposed settlement to the Court for approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," a stipulated judgment is appropriate. *Id.* at 1355. Settlements of FLSA claims are permissible because initiation of the action "provides some assurance of an adversarial context." *Id.* at 1354. In such instances, the employees are likely to be represented by an attorney who can protect their rights, and thus, "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* If the settlement reflects a reasonable compromise over issues that are actually in dispute, approval is permissible. *Id.*

Here, for the reasons set forth above, the settlement is an outstanding result for the FLSA Class Members and Opt-in Plaintiffs. Each Opt-in Plaintiff submitted an opt-in form agreeing to be bound by the result of any disposition of the case. Thus, no notice to those individuals is required. The FLSA Class Members will only be bound if they affirmatively submit a Claim Form. This Settlement of FLSA claims is fair and reasonable and should be approved at the Final Approval Hearing.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs submit that the settlement is fair, adequate and reasonable, and in the best interests of Plaintiffs, including the Opt-in Plaintiffs, the Covered California Rule 23 Class Members, and the FLSA Class Members. Under the applicable class and collective action standards, Plaintiffs request that this unopposed motion be granted; the Settlement of the Covered California Rule 23 Class Members' claims be preliminarily approved; the California class described herein be certified for settlement purposes only; Goldstein, Borgen, Dardarian & Ho and Obermayer Rebmann Maxwell & Hippel, LLP be appointed as Class Counsel; appointment of KCC as claims administrator be approved; the sending of Notices in the form submitted herewith be authorized; and a final approval hearing for the Settlement of the California Class claims be scheduled for June 22, 2016

596882.3

1  at 2:00 p.m., or as soon thereafter as the matter may be heard.  A Proposed Order is submitted

2  herewith.

3

4  Dated:  March 11, 2016.                    Respectfully submitted,

5                                              s/William C. Jhaveri-Weeks
                                              Laura L. Ho
6                                             Byron R. Goldstein
                                              William C. Jhaveri-Weeks
7                                             GOLDSTEIN, BORGEN, DARDARIAN & HO

8                                             Bruce C. Fox
                                              Andrew J. Horowitz
9                                             OBERMAYER REBMANN MAXWELL &
                                              HIPPEL, LLP
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

596882.3